# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| Axel Canaca Zuniga | ) Case No. 3:24-mj-70213 MAG |
| | ) |
| *Defendant(s)* | ) |

**FILED**
Feb 12 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 15, 2024 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(C) | Possesion with intent to distribute a mixture and substance containing a detectable amount of fentanyl |

This criminal complaint is based on these facts:

See attached affidavit of DEA Task Force Officer Domenico Discenza

☐ Continued on the attached sheet.

//s//
*Complainant's signature*

DEA Task Force Officer Domenico Discenza
*Printed name and title*

Approved as to form /s/ Ajay Krishnamurthy
AUSA Ajay Krishnamurthy

Sworn to before me by telephone.

Date: 02/12/2024

*Judge's signature*

City and state: San Francisco, CA      Hon. Peter H. Kang, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Axel CANACA ZUNIGA with possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), on or about January 15, 2024, in San Francisco, California, in the Northern District of California.

2. I am a Sergeant at the San Francisco Police Department (SFPD) and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that I was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer (TFO) for the DEA. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

3. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

4. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers

with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

5. Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

6. I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

7. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

**APPLICABLE STATUTE**

8. Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

**STATEMENT OF PROBABLE CAUSE**

9. On or about January 15, 2024, Axel CANACA ZUNIGA was arrested by law enforcement officers near the intersection of Turk Street and Larkin Street, in San Francisco, California, in the Northern District of California. During the search incident to his arrest, officers located federally controlled substances, including fentanyl, cocaine, and cocaine base. Based on the facts described below, I have probable cause to believe that CANACA ZUNIGA was in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute a mixture and substance containing a detectable amount of fentanyl.

10. Beginning at about 7:25 p.m. on January 15, 2024, on the 400 block of Turk Street in San Francisco, California, San Francisco Police Department Officer Hidalgo (#1512) observed a male individual, later identified as CANACA ZUNIGA, conducting what appeared to be multiple hand-to-hand illegal drug sales. These suspected transactions are described below.

11. Officer Hidalgo observed CANACA ZUNIGA standing on the north sidewalk of Turk Street, west of Hyde Street. Officer Hidalgo observed an unknown subject (S1) wearing a gray beanie, black sweatshirt, black pants, and black shoes approach CANACA ZUNIGA. CANACA ZUNIGA and S1 tucked into the alcove of the parking garage gate on the west end of 430 Turk Street. CANACA ZUNIGA was holding several clear plastic baggies containing white substances. After a brief interaction, CANACA ZUNIGA placed a small object into S1's hand, and S1 walked away eastbound on Turk Street.

12. CANACA ZUNIGA was then approached by another unknown subject holding an unknown denomination of US currency in his hand out towards CANACA ZUNIGA. CANACA ZUNIGA waved the subject off, and the subject continued walking eastbound on Turk Street.

13.     CANACA ZUNIGA was then approached by another unknown subject (S2), who was a White male wearing a gray beanie, brown jacket, blue jeans, and red and gray shoes. CANACA ZUNIGA reached under his sweatshirt.  Officer Hidalgo saw that CANACA ZUNIGA had a black fanny pack strapped across his torso. CANACA ZUNIGA removed a clear plastic baggie containing a white substance and handed a piece of the substance to S2. S2 handed CANACA ZUNIGA an unknown denomination of US currency and then left the area on foot.

14.     While CANACA ZUNIGA was interacting with S2, he was also approached by another unknown subject (S3), who was wearing a black beanie, black jacket, gray shirt, and black pants.  S3 handed CANACA ZUNIGA an unknown denomination of US currency. CANACA ZUNIGA reached into the fanny pack and removed another clear plastic baggie containing a white substance. CANACA ZUNIGA untied the baggie and removed a piece of the white substance from the baggie.  CANACA ZUNIGA placed the substance into S3's open left palm. After briefly inspecting the substance in his hand, S3 left the area on foot.

15.     Officer Hidalgo contacted an arrest team, consisting of Sergeant Moody (#1545) and Officer Murphy (#2158) to arrest CANACA ZUNIGA.  When Officer Murphy exited his unmarked vehicle and approached to take CANACA ZUNIGA under arrest, CANACA ZUNIGA began fleeing from Officer Murphy on foot, southbound across Turk Street.  Officer Hidalgo observed CANACA-ZUNIGA flee on foot from Officer Murphy westbound on Turk Street towards Larkin Street.  Officer Murphy yelled "Police! Stop!"  CANACA ZUNIGA turned northbound on Larkin Street.

16.     CANACA ZUNIGA ran around a parked car and then turned southbound. CANACA ZUNIGA then turned eastbound back onto Turk Street.  CANACA ZUNIGA tripped and fell in front of the bus stop located on the north side of Turk Street just east of Larkin Street. Officer Murphy was able to catch up to CANACA ZUNIGA and take him into custody.

17.     Officer Murphy was able to place CANACA ZUNIGA's left hand into handcuffs easily.  CANACA ZUNIGA held his right hand tightly under his abdomen.  Officer Murphy pulled CANACA ZUNIGA's hand out from underneath him, and three plastic baggies

containing suspected controlled substances flew out of CANACA ZUNIGA's hand. One of the bags ripped open and a substance, which Officer Murphy suspected to be fentanyl, spilled out. Officer Murphy collected as much of the substance as possible and returned it to the bag.

18. Officer Hidalgo conducted a search of CANACA ZUNIGA incident to arrest and located the following on CANACA ZUNIGA's person: a clear plastic baggie containing suspected cocaine HCL; a clear plastic baggie containing blue "M30" suspected fentanyl pills; and a total of $245 in US currency. In addition, law enforcement personnel found a sealed bag of suspected marijuana.

19. In total, leaving aside the suspected marijuana, law enforcement personnel recovered the following suspected controlled substances from CANACA ZUNIGA. These include the baggies that flew out of CANACA ZUNIGA's hand and fell onto the street:

- 15.3 grams (gross weight) of suspected fentanyl in two plastic baggies
- 11.2 grams (gross weight) of suspected cocaine base in one plastic baggie
- 2.4 grams (gross weight) of suspected cocaine HCL in one plastic baggie
- 5.9 grams (gross weight) of suspected fentanyl "M30" pills in one plastic baggie

20. Law enforcement personnel later tested the suspected controlled substances using a TruNarc testing device. The suspected fentanyl pills did not test presumptively positive for a controlled substance. The remaining substances described above tested presumptively positive for fentanyl, cocaine HCL, and cocaine base.






21. Based on my training and experience, and conversations with other law enforcement officers, I know that drug dealers in the Tenderloin District, in order to cater to their customers, commonly sell multiple drugs at a given time. The simultaneous, collective possession of multiple different federally controlled substances by CANACA ZUNIGA indicates to me, based on training and experience, that he possessed the drugs, including the fentanyl, with the intent to distribute. The typical Tenderloin drug user generally possesses only very small amounts of a drug (e.g., a gram or two at a time), and even them, only for a short period of time, because the user will often immediately ingest the drug they just purchased. Accordingly, the quantities of drugs found in CANACA ZUNIGA's possession also indicates that he possessed the drugs, including the fentanyl, with the intent to distribute.

22. All of the foregoing—including the multiple hand-to-hand transactions involving CANACA ZUNIGA and CANACA ZUNIGA's flight from law enforcement personnel—combined with the location of the arrest in San Francisco's Tenderloin District, an area notorious for a high volume of drug sales activity, leads me to conclude there is probable cause to believe that CANACA ZUNIGA possessed the drugs that law enforcement found on his person with the intent to distribute.

//
//
//
//
//
//
//
//
//
//
//
//

## **CONCLUSION**

23. Based on my training and experience, and the facts and circumstances set forth above, probable cause exists to believe that on January 15, 2024, in the Northern District of California, CANACA ZUNIGA possessed with the intent to distribute a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

//s//
_____
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to or before me over the telephone and signed by me pursuant to Federal Rule of Criminal Procedure 4.1 and 4(d) on this __12th__ day of February 2024. The complaint and warrant are to be filed under seal.

Hon. Peter H. Kang
United States Magistrate Judge